## APPEAL OF EDWARD P. MERTZ.

Docket No. 5695.    Promulgated November 30, 1926.

1. The amount of the deductible loss on the sale of a business determined from the evidence.
2. The value of real estate as of March 1, 1913, determined.

*George E. H. Goodner, Esq.*, for the petitioner.
*F. O. Graves, Esq.*, and *W. Frank Gibbs, Esq.*, for the Commissioner.

This appeal involves a deficiency in income tax for 1920 in the amount of $15,591.58, and for 1921 in the amount of $481.60.

There are two questions involved: (1) The amount of the loss, if any, sustained by the petitioner in 1920 on the sale of his business; and (2) the amount of the profit realized in 1921 on the sale of real estate.

### FINDINGS OF FACT.

In 1904 the petitioner, with other persons, organized a corporation known as the Orrine Company, having its principal place of business in the District of Columbia, for the purpose of manufacturing and selling a proprietary medicine designed for the cure of alcoholism. Prior to 1917 petitioner acquired all of the stock of the corporation except qualifying shares. The principal asset of the company was the formula for the manufacture of Orrine. There was a ready sale for the product and the net profits, for more than five years prior to 1917, were from $20,000 to $25,000 per annum.

The Orrine Company had tangible assets, including land, furniture and fixtures, cash and accounts receivable, which at no time exceeded $15,000 in value.

The petitioner, on December 31, 1917, surrendered all the stock for cancellation and received all the assets of the company. From that date he carried on the business in his individual capacity. The petitioner after paying expenses took out the profits of the business each month as they were earned. The business, including all assets then on hand, was sold by the petitioner in 1920 for $3,000 to Nixon, his son-in-law, who was then the manager of the business and who had been such for a number of years. The intangible assets, including the formula, had a value in 1917, when the petitioner received them in liquidation, of $30,000.

The petitioner in 1905 acquired real estate with the improvements thereon at 1144 and 1146 Fifteenth Street, N. W., Washington, D. C. On March 1, 1913, the value of the property was greater than the cost. The value of this property, consisting of both the building and the lot upon which it was situated, on March 1, 1913, was

$25,000. The value of the land was $12,500 and the value of the improvements thereon was $12,500.

The petitioner sold the property, including the improvements, in 1921 for $34,820 net. The improvements located on the said real estate suffered exhaustion, wear and tear at the rate of 2 per cent per annum.

OPINION.

TRAMMELL: The petitioner having received the assets in liquidation of the corporation in December, 1917, the value thereof at that time represents cost to him on the subsequent sale which occurred in 1920. The principal value of the business was in the trade name and the formula.

There was some testimony as to an offer of $100,000 for the business in 1915, but this testimony was indefinite and uncertain, the name of the person who made the offer not being known by the witness, or the terms of the offer or the capacity of such person to pay. We have considered this testimony but, in our opinion, it is not sufficient to establish the value claimed.

With respect to the record of earnings, the testimony was also uncertain and indefinite. The books having been lost or destroyed, the witness testified from memory. The petitioner may or may not have been entitled to a salary out of the earnings.

Another factor to be considered in determining the value of the intangible assets is the outlook for the future and the prospects that the business will continue to be as profitable as in the past. In our opinion, looking at the matter from the standpoint of a purchaser in 1917 of a business such as this, impending prohibition legislation would have been a factor for consideration by a prospective purchaser.

In view of the foregoing, we are not inclined to place a value on the intangible assets by the capitalization of earnings method. In our opinion, the value of the intangible assets received in 1917, including the formula, was $30,000. The loss sustained on the transaction is the difference between $30,000 and the amount of $3,000 received for both tangible and intangible assets.

With respect to the real estate sold by the taxpayer, we have the testimony of a witness who was familiar with real estate values in 1913, who had made appraisals of property on many occasions as a member of the Appraisal Committee of the Washington Real Estate Board, and who was familiar with such appraisals prior to the time he was a member of that board. From the testimony introduced, we are of the opinion that the real estate sold was worth $25,000 on March 1, 1913. Its cost prior to March 1, 1913, was less than that amount. It sold for $34,820 after deducting the real estate com-

missions. For the purpose of this case it makes no difference whether the real estate commissions be deducted as expense or whether they be deducted from the selling price of the property. The gain subject to tax is the difference between $25,000 and $34,820, the amount for which the property was sold, after taking into consideration the depreciation on the buildings.

*Judgment will be entered after 10 days' notice, under Rule 50.*